**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JANE DOE, *et al.*, )<br>)<br>   Plaintiffs, )<br>) CIVIL ACTION FILE<br>v. ) NO.: 1:19-cv-00813-SDG<br>)<br>GWINNETT COUNTY, GEORGIA, )<br>*et al.*, )<br>)<br>   Defendants. ) | |

**INITIAL DISCLOSURES OF DEFENDANT
GWINNETT COUNTY, GEORGIA**

COMES NOW defendant Gwinnett County, Georgia and pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, submits its initial disclosures as follows:

**(1)   If the defendants are improperly identified, state defendants' correct identification and state whether defendants will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.**

The County does not contend that it has been improperly identified.

**(2) Provide the names of any parties whom defendants contend are necessary parties to this action, but who have not been named by plaintiffs. If defendants contend that there is a question of misjoinder of parties, provide the reasons for defendants' contention.**

At this time, the County is unaware of any necessary parties who have not been joined.

**(3) Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendants in the responsive pleading.**

Plaintiffs Jane and John Doe are twin siblings who are autistic. Jane and John were seniors at Archer High School in January of 2017, when two students claimed to have seen a video of John having sex with his sister. One of John's classmates, K.E., attempted to blackmail John with the video, and John agreed to give K.E. a pair of sneakers until he was able to obtain money to pay him for his silence. All of this came to the attention of school personnel when a teacher reported that she overheard students discussing the alleged video of John having sex with his sister. In response, school administrator Tamara Coleman interviewed John, Jane, K.E., and T.B., another student who claimed that he saw the video.

The school's investigation did not uncover a copy of the video, but K.E. still admitted that he blackmailed John with it. And while T.B. did not blackmail John, he reported that he, too, had seen the video and that John had identified the girl in the video as his sister. The school administration referred the matter to the Department of Family and Children Services two weeks later upon learning that John had a younger sister at home, based upon the concern that she could be a potential victim. The Department of Family and Children Services, in turn, referred the investigation to the Gwinnett County Police Department.

The criminal investigation was assigned to Jonathan Leach, a Detective in the Special Victims Unit. Leach had been a member of this unit since 2015. Every member of the SVU, including Leach, attended specialized training in conducting forensic interviews of children. Leach's training included instruction on interviewing children with mental disabilities.

Although the school provided Detective Leach with extensive documentation of its investigation, Leach did not rely solely upon the school's investigation. Instead, Leach conducted his own interviews of K.E., T.B., John, and Jane.

K.E. told Leach that John showed him a video during the 2015-2016 school year in which a male (who John claimed was him) received oral sex from a

teenage-looking girl (who John claimed was his sister). K.E. said that he deleted the video shortly after receiving it from John. T.B. told Leach that John sent him a video of a male (who John claimed was him) having "actual sex" with a girl (who John claimed was his sister). T.B. stated that he deleted the video shortly after John sent it to him.

Leach continued his investigation by interviewing Jane at her school. Jane was accompanied by Ms. Coleman when she met Leach. Jane requested that Ms. Coleman remain wither her as she spoke with Leach. Ms. Coleman did so.

Consistent with his training, Leach took several steps to ensure that he could effectively communicate with Jane. Before questioning Jane regarding the allegations involving her twin brother, Leach discussed with Jane the difference between a truth and a lie using the color of his pen as an example. Jane demonstrated that she understood the difference between a truth and a lie.

Jane told Leach her name, date of birth, school, grade, teachers, classes, and family members. Leach then had Jane practice describing events using narratives. Although she had some difficulty providing narrative examples, she was able to tell Leach about making a pizza and a grilled cheese sandwich in her Health and Nutrition class.

With the aid of an anatomical drawing that Leach provided, Jane identified parts of the human body. Jane identified the vagina as a "private part" and the penis as a "ding dong."

Based upon their initial interactions, Leach concluded that Jane could meaningfully communicate regarding John's alleged conduct. During the remainder of the interview, Jane told Leach of multiple instances in which John laid on her and "attached" his "ding dong" to Jane's "private part." When describing the encounters, Jane simulated the act by rocking back and forth in her chair and moving her hips.

The interview lasted for approximately 44 minutes. At times, Jane expressed concern that she was in trouble. Both Leach and Ms. Coleman repeatedly assured Jane that she was not in trouble. At one point during the interview, Jane asked Ms. Coleman to hold her hand and Ms. Coleman did so.

**(4) Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which Defendants contend are applicable to this action.**

Illustrative authorities include but are not limited to the following:

- Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, *et seq*.

- Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794, *et seq*.

- <u>Bircoll v. Miami-Dade County</u>, 480 F.3d 1072, 1083 (11th Cir. 2007) (describing elements of an ADA claim).

- <u>Cash v. Smith</u>, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000) (discrimination claims under the RA are governed by the same standards used in ADA cases).

- <u>McCullum v. Orlando Reg'l Healthcare Sys., Inc.</u>, 768 F.3d 1135, 1146–47 (11th Cir. 2014) ("To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent.").

- <u>Albra v. City of Fort Lauderdale</u>, 232 F. App'x 885, 889 (11th Cir. 2007) (affirming dismissal of ADA claim based on the refusal of police to investigate a crime and stating that plaintiff "was not denied public benefits because the City did not have a duty to investigate his claim").

- <u>Rylee v. Chapman</u>, 316 F. App'x 901, 906 (11th Cir. 2009) (denial of hearing-impaired arrestee's request to use cellular telephone during booking and 24-hour detention did not violate ADA and RA).

- <u>Gaston v. Bellingrath Gardens & Home, Inc.</u>, 167 F.3d 1361, 1363 (11th Cir. 1999) ("[A] plaintiff cannot establish a claim under the Rehabilitation

- Act alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation.").

- Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 346 (11th Cir. 2012) (discussing intentional discrimination requirement for recovery of compensatory damages).

- Wood v. President and Trustees of Spring Hill College, 978 F.2d 1214, 1219 (11th Cir. 1992) ("good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages").

This defendant's research, investigation, and discovery are ongoing, and it reserves the right to supplement these disclosures with additional legal authority.

**(5) Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)**

See Attachment A.

**(6) Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written**

**report satisfying the provisions of that rule. (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)**

See Attachment B.

**(7) Provide a copy of, or description by category and location of all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claim or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

See Attachment C.

**(8) In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under Fed. R. Civ. P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

See Attachment D.

**(9) If Defendant contends that some other person or legal entity is, in whole or in part, liable to the Plaintiff or Defendants in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.**

Not applicable.

**(10) Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

<u>See</u> Attachment E.

This 22nd day of May, 2020.

          CAROTHERS & MITCHELL, LLC

          <u>/s/ Brian R. Dempsey</u>
          Richard A. Carothers
          Georgia Bar No. 111075
          richard.carothers@carmitch.com
          Brian R. Dempsey
          Georgia Bar No. 217596
          brian.dempsey@carmitch.com

          Attorneys for Defendant Gwinnett County, Georgia

1809 Buford Highway
Buford, GA 30518
(770) 932-3552 (office)
(770) 932-6348 (fax)

## ATTACHMENT A

In addition to the named parties to this action, this defendant identifies the following individuals who are likely to have discoverable information regarding the facts of Leach's interview with Jane Doe:

Tamara Coleman
Archer High School
2255 New Hope Road
Lawrenceville, Georgia 30045
(678) 407-7782

-12-

## ATTACHMENT B

This defendant has not yet made a decision as to whether it will present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. This defendant will supplement these disclosures should an expert be retained for trial purposes.

## ATTACHMENT C

1. All documents listed by the parties in response to their initial disclosures;

2. POST training transcript of Jonathan Leach;

3. Gwinnett County Police Department Standard Operating Procedures;

4. Protocol Order entered by the Gwinnett County Superior Court pursuant to O.C.G.A. § 19-5-2; and

5. Gwinnett County Police Investigator's Report file, including video-recorded interview of Jane Doe.

This defendant's research, investigation, and discovery are ongoing, and it reserves the right to supplement these disclosures with additional information should it be warranted.

-14-

## **ATTACHMENT D**

Not applicable.

## ATTACHMENT E

This defendant's liability insurance policy information will be produced to plaintiff upon reasonable notice.

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing **INITIAL DISCLOSURES OF DEFENDANT GWINNETT COUNTY, GEORGIA** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to the following counsel of record who are CM/ECF participants:

Jeffrey R. Filipovits, Esq.
Spears & Filipovits, LLC
1126 Ponce de Leon Ave. NE
Atlanta, GA 30306

Jennifer B. Hickey, Esq.
Law Office of Jennifer Hickey
375 Rockbridge Rd NW Ste 172−338
Lilburn, GA 30047

This 22nd day of May, 2020.

                                              */s/ Brian R. Dempsey*
                                              Brian R. Dempsey
                                              Georgia Bar No. 217596
                                              brian.dempsey@carmitch.com